**UNITED STATES of America, Appellee,**

v.

**George CUADRADO, Appellant.**

**No. 648, Docket 33336.**

United States Court of Appeals Second Circuit.

Argued June 12, 1969.

Decided July 15, 1969.

Preben Jensen, New York City (Wade S. Hooker, Jr., New York City, on the brief), for appellant.

Jack Kaplan, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, John H. Doyle, III, and Charles P. Sifton, Asst. U. S. Attys., on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

**J. JOSEPH SMITH, Circuit Judge:**

This is an appeal from a judgment of conviction entered in the United States District Court for the Southern District of New York on May 7, 1968, after trial before Judge Metzner and a jury, on both counts of an indictment charging appellant with receiving, concealing, selling and facilitating the transportation, concealment and sale of a quantity of heroin hydrochloride on October 9, 1967 and November 20, 1967, in violation of 21 U.S.C. §§ 173 and 174. Appellant questions the admissibility of evidence, the voluntariness of confessions, venue and the validity of the statutory presumptions. We find no error and affirm the judgment.

Federal Bureau of Narcotic agents Navarro (who was acting in an undercover capacity), Flynn, Iopollo, and Chekett (who were acting in a surveillance capacity) testified that appellant on October 9, 1967 sold Navarro a tinfoil package containing 20.8 grams of heroin for $700 on the corner of Essex and Delancy Streets just over the Williamsburg Bridge in Manhattan. On November 20, 1967, appellant, in two telephone conversations with Navarro, agreed to sell ⅛ kilogram of heroin for $3,800 and to make delivery at Essex and Delancy at 8:30 that night. Cuadrado arrived at the appointed time and place and was promptly arrested by agents Flynn, Iopollo, Chekett and White. In appellant's pocket was a plastic bag containing 111 grams of heroin. The agents advised appellant of his constitutional rights and drove him to Narcotics Bureau headquarters at 90 Church Street for photographing and fingerprinting. Agent Flynn asked Cuadrado if he would be willing to cooperate with the government, and told him that it would be advantageous to him to do so in order to secure lenient treatment by the government for himself. Cuadrado consented, but for his own protection asked not to be lodged overnight at the Federal Detention facility lest other inmates learn his identity, and appellant was accordingly allowed to spend the night in a back room at the Narcotics Bureau office. On the following morning at the United States Court House, Cuadrado said that the

heroin in his possession had been given him through an intermediary by one Gilberto Pulido for delivery, and admitted having made sales of heroin in the past for Pulido, reiterating his desire to co-operate. After being brought before the United States Commissioner, appellant was released on his own recognizance on the government's recommendation. Cua- drado did not cooperate as promised.

Cuadrado's defense was that of alibi. He and one Rodriguez testified that Cuadrado was at the club Hijos Di Catania continuously on the afternoon and evening of October 9. Cuadrado insisted that all he did on that date was to put agent Navarro in touch with a man named Charles whom he knew to be a seller of narcotics. With regard to the events of November 20 appellant testified that he told Navarro that he did not want to bother with drugs anymore, and that he was arrested at a travel agency in Brooklyn and did not have narcotics in his possession at the time. A shopkeeper named Hernandez corroborated Cuadra-do's story to the extent that he saw appellant being frisked by four men outside the travel agency in Brooklyn, at 203 Havemeyer Street.

Appellant's first claim is that the District Court committed prejudicial error in admitting testimony about a sale of narcotics not charged in the indictment.

The government on rebuttal recalled agents Navarro, Flynn and White who testified that agent Navarro, under the surveillance of agent Flynn, drove to 91 Broadway in Brooklyn on November 8, 1967 on appellant's instructions, paid Cuadrado $700 and was given by appellant a plastic bag containing 19.8 grams of heroin.

The government did not include the November 8 transaction in the indictment because venue on that count would properly have been in the Eastern District.

■■ The testimony was admissible since it was relevant for other purposes than to prove appellant's criminal propensity. Proof of the November 8 transaction was admissible to contradict appellant's testimony on direct examination that he did not hear from agent Navarro between October 9 and November 20 and appellant's testimony, on both direct and cross examination, that he had never dealt in narcotics except on October 9 to do a favor for a friend, and to rebut Cuadrado's claim that this involvement had not been with the intent to derive any benefit for himself.

This court has held in a long line of cases that evidence of similar acts, including other crimes, is admissible when it is substantially relevant for a purpose other than merely to show defendant's criminal character or disposition. United States v. Deaton, 381 F.2d 114, 116 (2d Cir. 1967) (intent). Where a defendant in his direct testimony falsely states a specific fact, "the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied *as to that fact*." United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963); Walder v. United States, 347 U.S. 62, at 65, 74 S.Ct. 354, at 356, 98 L.Ed. 503 (1954): "[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." See also United States v. Knohl, 379 F.2d 427 (2d Cir. 1967); United States v. Braverman, 376 F.2d 249 (2d Cir. 1967); Spencer v. Texas, 385 U.S. 554, 560–562, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967). In *Walder, supra,* the Court held that this rationale applies to admit even evidence unconstitutionally obtained in violation of the Fourth Amendment where the defendant made the sweeping claim that he had never dealt in or possessed any narcotics.

The use of the evidence was not improper here. The government's attack was aimed at a specific and related transaction, and its use was limited by the court's instructions. Judge Metzner properly charged the jury that the testi-

mony about the November 8 transaction "cannot be considered \* \* \* in determining whether the defendant is guilty" but only as evidence "bearing on defendant's credibility as a witness." Permitting its use for this purpose was well within the court's discretion. United States v. Deaton, *supra*, 381 F.2d at 118 n. 3.

The court's instructions on venue might have been clearer, but no objection was made, and in order for conviction to be had under the instructions given, the jury must have found that the transactions took place at locations which are, as the court may take notice, within the Southern District of New York. Cf. Weaver v. United States, 298 F.2d 496 (5th Cir. 1962).

The question of the voluntariness of Cuadrado's admissions to the agents was not raised by preliminary motion to suppress, but was sufficiently put in issue by objection on trial and by motions to strike. These objections and motions were properly overruled and denied, nevertheless, for the circumstances of the interviews were fully developed on trial and supported the court's conclusion that the admissions were not inadmissible as involuntary.

Cuadrado also attacks the judgment on the basis of the invalidation of the statutory presumptions of 21 U.S.C. § 176a in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (May 19, 1969). *Leary* was, however, a marihuana case, and the basis for the presumptions is far stronger in the case of heroin, at issue here. The Court in *Leary* specifically refused to pass upon the section 174 presumption, upheld in Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), pointing out (89 S.Ct. p. 1553, fn. 92) that "The facts regarding 'hard' narcotics may well be significantly different." We have no reason to conclude either that there was any American production of heroin at the time the statute was enacted or at the time of the offenses here, or

that the purveyors of heroin or the public at large had any impression other than that it was and is imported. The judgment is affirmed.