**UNITED STATES of America**

v.

**William A. SORENSON, Defendant-Petitioner.**

**No. 69-C-975.**

United States District Court
E. D. New York.

Jan. 27, 1970.

2. See Southern RR. Co. v. South Carolina Highway Dept., 246 F.Supp. 435 (E.D.S.C. 1965).

Edward R. Neaher, U. S. Atty., East-
ern Dist. of New York, for United States,

Edward J. Boyd, V, Asst. U. S. Atty., Brooklyn, of counsel.

Milton Adler, Legal Aid, Brooklyn, N. Y., for petitioner, Simon Chrein, New York City, of counsel.

BARTELS, District Judge.

This case comes before the court on a motion in *forma pauperis* by William A. Sorenson, a federal prisoner, to vacate a judgment of conviction and sentence pursuant to the provisions of 28 U.S.C. § 2255, and presents serious constitutional questions.

Petitioner was convicted by a jury in the United States District Court for the Eastern District of New York on March 21, 1962, for violation of 21 U.S.C. § 174, and was sentenced to imprisonment for a term of ten years, to begin upon completion of a ten to thirty year term in a New York State prison for a conviction of manslaughter in the first degree. The indictment alleged: "That on or about June 7, 1959, at 628 78th Street, Brooklyn, New York, within the Eastern District of New York, the defendant WILLIAM A. SORENSON did knowingly and unlawfully receive and conceal a narcotic drug, to wit: approximately 2 kilograms, 924 grams and 208 milligrams of Isonïpecaine, knowing the same to have been imported contrary to law. (Title 21 United States Code § 174)". The relevant portion of Section 174 charges that anyone who receives, conceals, or facilitates the concealment or sale of a narcotic drug which has been imported into the United States contrary to law "knowing the same to have been imported or brought into the United States contrary to law * * * shall be imprisoned not less than five or more than twenty years * * *." The section further provides that: "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

At the trial the Government introduced no evidence of either illegal importation or Sorenson's knowledge of illegal importation. Instead of proof of these elements of the offense, the Government chose to rely entirely upon the statutory presumptions arising under the above section from proof of possession alone. On appeal Sorenson challenged the constitutionality of these presumptions but the Court of Appeals upheld their validity (330 F.2d 1018 (2d Cir. 1964)) and Sorenson's subsequent petition for a writ of certiorari was denied by the Supreme Court (380 U.S. 945, 85 S.Ct. 1027, 13 L.Ed.2d 963 (1965)). At that time Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) had not been decided and its criteria were accordingly not applied. Since that date the Supreme Court has re-examined and re-evaluated the rationality of these statutory presumptions in a trilogy of cases beginning with United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965), and culminating with Leary v. United States, *supra,* which decision triggered Sorenson's present application. In this petition Sorenson repeats his argument that the § 174 presumptions deprived him of due process of law in violation of his Fifth and Sixth Amendment rights.

█ Preliminarily it is necessary to inquire whether in the present posture of the case § 2255 is available for a collateral attack upon the constitutionality of the § 174 presumption as it applies to isonipecaine (popularly known and hereafter referred to as "demerol"). Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), provide a clear answer to the question. In those cases the Supreme Court noted that post-conviction relief must be available for the adequate protection of constitutional rights relating to the criminal trial pro-

cess. Successive motions on grounds previously heard and determined will be denied only when there has been an adjudication on the merits of the ground presented in the subsequent application. While federal prisoners applying for post-conviction relief have often had their constitutional claims adjudicated by federal courts at trial or on appeal and accordingly are not in the same category as state prisoners, nevertheless if on appeal there has not been an adjudication on the merits of the constitutional claim, a § 2255 application may be invoked by a federal prisoner. *Cf.*, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963). In holding that *res adjudicata* is not a bar under those circumstances the *Sanders* court said that "conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged" (373 U.S. p. 8, 83 S.Ct. p. 1073). The same view was expressed in *Kaufman* where the court announced that "the provision of federal collateral remedies rests more fundamentally upon a recognition that adequate protection of constitutional rights relating to the criminal trial process requires the continuing availability of a mechanism for relief" (394 U.S. p. 226, 89 S.Ct. p. 1074).

■ Thus the court is faced with the task of applying the *Leary* standards to the presumptions created by § 174 insofar as they apply to demerol. The statute creates two presumptions arising from possession of demerol, (i) concealment or receipt of demerol illegally imported, and (ii) knowledge that demerol was illegally imported. For the resolution of this issue it is necessary for the court to address itself only to the latter presumption. The test for determining the validity of a statutory presumption was first enunciated in Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943), where the court required that "there be a rational connection between the facts proved and the fact presumed" in order to validate the presumption. The test was later applied

in United States v. Romano, *supra*, where an attenuated presumption was invalidated, and finally in Leary v. United States, *supra*, where the Supreme Court added a new dimension to the test for "a rational connection between the facts proved and the fact presumed". The court postulated that before this connection may be established it must "be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend" (395 U.S. p. 36, 89 S.Ct. p. 1548). While here, as in *Leary*, utmost deference must be paid to the presumed Congressional determination that knowledge of illegal importation is warranted, the presumption must nevertheless fall if the connection between the basic facts upon which the presumption rests and the presumption itself is "irrational" or "arbitrary".

At the outset it should be noted that hard-core narcotics such as opium or heroin which have never been produced in the United States are not here involved (Trotter v. United States, 359 F.2d 419 (2d Cir. 1966); United States v. Adams, 293 F.Supp. 776, 786 (S.D.N.Y. 1968)). As said in *Leary*, the "facts regarding 'hard' narcotics may well be significantly different" (395 U.S. p. 45, n. 92, 89 S.Ct. p. 1553), and the § 174 presumption as applied to them has just recently been upheld. See Turner v. United States, 90 S.Ct. 642 (1970); Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925). To the same effect are United States v. Costa, Nos. 33760 and 33814, 2d Cir., December 15, 1969, and United States v. Cuadrado, 413 F.2d 633 (2d Cir. 1969).

■ At the time the statute was amended to extend the definition of a narcotic drug to include demerol, Congress was anxious to check the pernicious effect resulting from its indiscriminate use. In fact, the House Committee Report (H.R.Rep. No. 1588, 78th Cong., 2d Sess. (1944), also adopted as the Senate Report (S.Rep. No. 1004, 78th Cong,. 2d Sess. (1944)) stated that this newly discovered synthetic drug produced

physiological characteristics similar to morphine.[1] To place the drug under control Congress did no more than amend the "various sections of existing law to subject isonipecaine [demerol] to the same restrictions as morphine with respect to manufacture, distribution, importation, and exportation" (H.R.Rep., *supra*, at 2), without addressing itself to the presumption of illegal importation. A search of the legislative history of the amendatory provisions of the narcotics statute[2] to include demerol reveals no evidence that Congress actually considered the fact of domestic production in applying the § 174 presumption to this particular drug. The House Committee in its report upon the bill mentioned the fact that demerol was being produced domestically by Winthrop Chemical Company for distribution in the United States at a rate of 300 ounces daily or approximately 240,000 ounces annually. The domestic production of demerol is not barred by statute and the Government has conceded that demerol[3] is a synthetic drug whose component parts are commonly available in the United States and that for the years up to 1960 the vast bulk of demerol was domestically produced. Indeed, one finds no statistics showing the importation of demerol for those years, which cover the period involved in the indictment. Thus the court is forced to the conclusion that in subjecting demerol to the § 174 presumption, Congress had no assurance or any indication whatsoever that there was any validity for the connection between the basic fact of possession and the presumption of illegal importation.

In fact, there was no probability and little possibility that the possessor of demerol had knowledge of illegal importation and there was no basis for the jury to accept this legislative judgment. In this context the connection between the basic fact and the statutory presumption was and is irrational and arbitrary; hence the imposition of this presumption in lieu of proof at the petitioner's trial deprived him of due process in violation of the Fifth and Sixth Amendments. See Turner v. United States, *supra*.

There remains the question whether the *Leary* standards invalidating the § 174 presumption as applied to demerol should be applied retroactively to 1959 —a question which might wait for a higher court determination were it not for the fact that the liberty and constitutional rights of the petitioner are presently at stake. In approaching a resolution of the issue the Supreme Court has enumerated the following criteria: (a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Of the three criteria enumerated, the Supreme Court has announced that primary consideration should be given to the purpose to be served by the new rule. Desist v.

---

1. The immediate concern of Congress was to bring distribution of the drug under governmental supervision. As stated in the House Report (p. 2) "unless subjected to the same enforcement control as morphine, the manufacture, distribution and use of the new synthetic drug will soon be productive of serious abuses with the inevitable spread of drug addiction." This alarm was expressed to the House by the bill's major supporter, Representative Doughton, who stated that "unless this drug is placed under con-

trol there is no telling what the consequences may be." 90 Cong.Rec. 5389 (1944).

2. Act of July 1, 1944, ch. 377, § 8, 58 Stat. 721.

3. "Isonipecaine" [demerol] is defined in 26 U.S.C. § 4731 as follows: "The word 'isonipecaine', as used in this part shall mean any substance identified chemically as 1-methyl-4-phenyl-piperidine-4-carboxylic acid ethyl ester, or any salt thereof, by whatever trade name designated."

United States, *supra,* 394 U.S. at 249, 89 S.Ct. 1030.

■■ Summarizing the cases, it appears that where the primary purpose of a new rule is prophylactic in nature such as the prevention of potential improper police activity, the damage is already done and cannot be undone by overturning existing convictions. In such cases the rule is not applied retroactively; see, e. g., Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), with respect to rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (re Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (re Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); Stovall v. Denno, *supra* (re United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)); Desist v. United States, *supra* (re Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). On the other hand, where the combination of factors in the new rule affects the integrity of the fact finding or truth determining process so as to render it unreliable, retroactive application is justified (Johnson v. New Jersey, *supra,* 384 U.S. at 727, 86 S.Ct. 1772); see, e. g., Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964) (re Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)); Smith v. Crouse, 378 U.S. 584, 84 S.Ct. 1929, 12 L.Ed.2d 1039 (1964) (re Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Eskridge v. Washington State Board of Prison Terms and Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (re Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956)); McNerlin v. Denno, 378 U.S. 575, 84 S.Ct. 1933, 12 L.Ed.2d 1041 (1964) (re Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964)); McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968) (re Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) (re White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)); Roberts v. Russell, *supra* (re Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969) (re Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)).

■ With these principles in mind, the court weighs the issue of retroactivity. Since the available evidence does not support the rationality of the knowledge part of the § 174 presumption to the extent that it applies to demerol, it becomes increasingly evident that there is no integrity to the fact finding process as to an essential element of this offense. The primary purpose of the *Leary* rule is to protect the innocent from conviction because of the unreliability of irrational presumptions as to a material element of a crime. In this case the presumption is so untrustworthy that it falls within the categories discussed in Johnson v. New Jersey, *supra,* justifying retroactive application. In spite of countervailing considerations such as the probable reliance in the past of federal prosecutors upon the § 174 presumption and the probable incarceration of a number of federal prisoners for possession of demerol, the court must apply *Leary* principles retroactively under the criteria of Roberts v. Russell, *supra,* where the Supreme Court said that "even if the impact of retroactivity may be significant, the constitutional error presents a serious risk that the issue of guilt or innocence may not have been reliably determined."

The conclusion follows that the petitioner has been deprived of his constitutional right to due process and the court accordingly grants petitioner's motion to

vacate the judgment of conviction and sentence and orders the petitioner to be released from federal custody unless he is retried or an appeal is taken from this order within thirty days from the date of entry hereof. So ordered.