UNITED STATES of America

v.

Carlos M. FLECHA, Jr.

Crim. No. 76–583.

United States District Court,
E. D. Pennsylvania.

Nov. 8, 1977.

Wallis W. Wetlesen, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

David A. Garfunkel, Defender Assn. of Philadelphia, Philadelphia, Pa., for defendant.

## OPINION

DITTER, District Judge.

Defendant contends he was prejudiced by the prosecution's failure to comply with

Federal Rule of Criminal Procedure No. 16(a)(1)(A) which requires disclosure in advance of trial of inculpatory statements. Having concluded there was no bad faith on the government's part and that no substantial right of the defendant was prejudiced, I must deny his motion.

### FACTUAL BACKGROUND

With the help of an informant, Undercover Agent Shirley Groff arranged to purchase a quantity of heroin in Philadelphia. While agents Frank Lee and Henry Cunningham observed her from a nearby vantage point, Agent Groff bought four bundles of heroin from a man whom she later identified as the defendant, Carlos Flecha. During the course of the sale, Miss Groff noticed that the man had the word "love" tatooed on one of his arms. The transaction was consummated within three minutes and is the subject of the indictment in this case. The defendant was tried before a jury and convicted.

Critical to the issue raised by the instant motion is an incident which occurred sometime after the actual sale. Once the narcotics had been purchased, Agent Groff left the area along with the informant. Agent Lee, however, remained behind to confirm his identification of the seller. Accompanied by two Philadelphia police officers, Lee went to a nearby intersection where he saw a person he identified as the defendant seated in a van. Another man was standing on the porch of a house close to the intersection. With Agent Lee concealed in the rear of the police vehicle, one of the officers called the name "Carlos," whereupon the man on the porch inexplicably fled, running at a rapid pace down the street. The officers pursued him, but without success, and after a short time they returned to the general vicinity of the house and parked. At this point, the defendant reappeared, riding a bicycle. He approached the police vehicle and engaged in a casual exchange with the two officers. During the course of that conversation, the defendant stated in response to a question that his name was Carlos Flecha. He also gave his birthdate. Agent Lee, who remained out of sight, was able to see and hear this by means of an observation port.

At trial, Agent Groff testified that the defendant was the man from whom she had purchased the heroin, and she also described the tatoo that she had seen on his arm. (N.T. 24, First day). This identification was corroborated by Agents Cunningham and Lee, both of whom testified that the defendant was the man they had seen sell the narcotics to Miss Groff. (N.T. 46–50, 62, First day). As the final blow in the government's direct case, Agent Lee then related the details of the defendant's statement of his name and birthdate to the police officers. (N.T. 69–72, First day).

The defendant took the stand briefly in his own behalf. His direct testimony consisted of little more than a denial of any participation in the sale of heroin to Agent Groff. On cross examination, Mr. Flecha was asked to roll up his sleeves, thereby revealing a number of tatoos on his arms. He then admitted that he did, at one time, have a tatoo in the form of the word "love." (N.T. 111, Second day). Neither the defense nor the government examined the defendant with regard to the events described by Agent Lee which took place after the sale.

### MOTION FOR A NEW TRIAL

The defendant seeks a new trial on the ground that the admission into evidence of his statement concerning his name and birthdate violated Federal Rule of Criminal Procedure 16(a)(1)(A) because the existence of that statement had not been previously disclosed to defense counsel. After considering the facts and the briefs of counsel, I am persuaded that disclosure of the statement is required under Rule 16. The Rule provides that the government must disclose the substance of any oral statement made by the defendant in response to interrogation by a known government agent if the statement is intended to be offered at trial.

Fed.R.Crim.Proc. 16(a)(1)(A).[1] To succeed on a motion for a new trial, however, the defendant must do more than establish the government's failure to comply with its duty of disclosure. In addition, he must show that his substantial rights were prejudiced by the non-disclosure. *United States v. Cole,* 453 F.2d 902, 904 (8th Cir.), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *United States v. Saitta,* 443 F.2d 830, 831 (5th Cir.), cert. denied, 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971). It is here that I find the fatal defect in defendant's argument. Noting that an application for relief under Rule 16 is addressed to the discretion of the trial court, *United States v. Cole,* supra; cf. *United States v. Fioravanti,* 412 F.2d 407, 410 (3d Cir. 1969), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1970), I must conclude that the potential for prejudice in this case is insufficient to warrant a new trial.[2]

Defendant cites several cases in support of his argument that the alleged prejudice here mandates a new trial. Each of these cases, however, is distinguishable from the present controversy, in that it involved significantly more damaging evidence, the disclosure of which might well have caused defense counsel to alter his trial preparation or strategy. Both *United States v. Padrone,* 406 F.2d 560 (2d Cir. 1969) and *United States v. Lewis,* 167 U.S.App.D.C.

232, 511 F.2d 798 (2d Cir. 1975), involved the non-disclosure of statements which directly contradicted defendant's trial testimony. The prosecutors used these statements on cross-examination for impeachment purposes. Clearly, had disclosure been made, defense counsel might well have changed their trial tactics, as by advising their clients not to testify. In the present case, by contrast, Mr. Flecha's statement contradicted neither his testimony nor any other evidence offered by the defense. While granting a new trial in *Padrone,* supra, the Second Circuit stated that "Of course there may be cases where such a sanction is not called for, as where the statement consists of denials or the like and there is no prejudicial inconsistency between the defense and the statement which is withheld." 406 F.2d at 561. This appears to be such an instance. It should also be noted that this is not a case where the defendant was "surprised" by the use of an undisclosed statement on cross-examination. Rather, the government offered this evidence as part of its case-in-chief, thereby providing counsel with ample opportunity to make any changes he deemed appropriate in conducting the defense.

*United States v. Baum,* 482 F.2d 1325 (2d Cir. 1973), and *United States v. Kelly,* 420 F.2d 26 (2d Cir. 1969), cited by the defend-

---

1. While there is room for some doubt, it seems relatively clear that Flecha made this statement in response to questioning by the police officers, rather than merely volunteering the information. On direct examination Officer Lee testified as follows:

    He [Flecha] asked what was happening and they [the police officers] asked him why did the other guy run. He said, "Hey, I don't know. Maybe he was just nervous," something like that, and subsequently *they obtained* his correct date of birth and the name of Carlos Flecha Jr., and—
    Q. That was in your presence? You heard them obtain that information?
    A. Right, wrote it down on what we call a 48 or complaint sheet.
    Q. And the defendant himself stated that. Is that right?
    A. Yes, he was on the bicycle leaning into the—he had rode the bike right up beside the van. He was leaning on the police wagon talking to the guy because, as I told you, the

police officer knew him and after he got his date of birth from him and his full name and he asked him some *other questions*; who was the other guy, and Carlos told him and I'm not sure whether he said he was related to him or not.
    N.T. p. 72, first day (emphasis added).

2. It would be erroneous to conclude that Mr. Flecha's statement was sheer trivia, and no such suggestion is implied in my denial of the defendant's motion. Admittedly, the statement consisted of nothing more than Flecha's name and birthdate. Standing alone, it was neither inculpatory nor exculpatory, and it could not be deemed crucial to the government's case in light of the other compelling evidence offered against the defendant. Nevertheless, despite its purely corroborative nature, this statement went directly to the question of identity, the only genuine issue of fact presented at trial. Under these circumstances, it must be conceded that the statement had at least some degree of significance.

ant, are equally inapposite. In each case, the government failed to disclose evidence which was important to the prosecution, and there was a significant possibility that the defendant might have effectively attacked that evidence had he been given an opportunity to prepare. Here, it is doubtful that defendant would have benefited by disclosure of the statement in question. Defense counsel asserts that had he been aware of the statement, "he could have subpoenaed the police officers who were present, questioned them, and demanded production of the Police form # 48 on which the officer allegedly recorded the statement." Memorandum of Law in Support of Defendant's Motion for a New Trial, at 4. The value of such an effort, however, is at best speculative,[3] especially in light of the other compelling evidence offered against Mr. Flecha. The government's case depended principally on positive identifications of the defendant by three experienced narcotics agents, plus the defendant's admission that he had an unusual tatoo similar to one seen on the arm of the seller. While the limited statement regarding name and birthdate may have eased the job of the police in seeking and finding the defendant to arrest and charge him with the instant offense, the description of these events to the jury had comparatively little impact. I conclude that its non-disclosure did not prejudice defendant in any substantial manner. See *United States v. DeLeo*, 422 F.2d 487, 498–99 (1st Cir.), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970).

Finally, the government's apparent good faith in this case bears mention. By her affidavit of September 22, 1977, Assistant United States Attorney Wetlesen informs the court that it was only a matter of days before the trial that she learned of the statement herself.[4] Defendant does not dispute this, nor does he make any suggestion that the government was guilty of a deliberate attempt to conceal evidence. Therefore, this is not an instance of the "trial by ambush" condemned in *United States v. Kelly*, supra, 420 F.2d at 29.[5]

In summary, the nondisclosure in this case did not prejudice the defendant's substantial rights, and it was not the result of deliberate prosecutorial misconduct. The motion for a new trial must therefore be denied.

---

**3.** There was ample opportunity after trial to subpoena the officers or obtain statements from them.

**4.** The government, of course, was not relieved of its duty to disclose merely because the evidence was discovered at a late date. On the contrary, subdivision (c) of Rule 16 provides that the duty continues, even during the trial.

**5.** It seems clear that if the evidence established a deliberate act of concealment or deception by the prosecutor, a new trial would have to be granted. Directly on point is *United States v. Baum*, 482 F.2d 1325 (2d Cir. 1973). There, the government refused to reveal the identity of an important prosecution witness until he was called to testify. Despite the defendant's failure to show how disclosure would have helped his case, the court of appeals ordered a new trial, declaring that "we would rather give the defendant the benefit of the doubt than let the Government reap even a slight possibility of benefit from what we regard as a lack of candor unworthy of a prosecutor." *Id.* at 1332.