STATE OF VERMONT
ENVIRONMENTAL COURT



}
Appeal of Bren       }   Docket No. 68-4-04 Vtec
}
}

## Decision on Pending Motions

Appellant Robin Bren appealed from a decision of the Town of Warren Development Review Board ("DRB") dated March 17, 2004,[1] approving Appellee-Applicants Paul and Victoria Eardensohns' application for a four-lot subdivision located at the corner of German Flats Road and Sugarbush Woods Road in the Vacation Residential district. Appellant is represented by Lauren S. Kolitch, Esq.; Appellee-Applicants are represented by Paul S. Gillies, Esq. and Charles L. Merriman, Esq. Now pending are Appellee-Applicants' Amended Motion for Partial Summary Judgment and Appellee-Applicants' Motion in Limine to limit the testimony of Appellant at trial.

## Factual Background

Having reviewed the pleadings relating to the two pending motions that are now ripe for the Court's consideration,[2] we have concluded that the following material facts are undisputed, unless otherwise noted.

1. Appellee-Applicants Paul and Victoria Eardensohn own a 16.6± acre parcel of land located westerly of German Flats Road, northerly of Sugarbush Woods Road, and northerly and easterly of so-called Sugarbush Woods Circle.

2. Sugarbush Woods Road is also Town Highway 55 ("TH55").

3. In separate proceedings before the Washington Superior Court, it was determined that TH55 is a public road through common law implied dedication and acceptance, and further that the location and width of TH55 are as reflected in the John Roth survey of August 1963. Bren v. Eardensohn, et al., Docket No. 320-5-05 Wncv (Washington Superior Ct., Jan. 22, 2007).

---

[1] On May 10, 2005, this appeal was placed on inactive status while the parties litigated their road dispute in Washington Superior Court. See below at ¶3.

[2] Appellant's most recent sur-reply to Appellee-Applicants' motions, filed with the Court on September 14, 2007, also contained requests to strike, preclude or limit certain documents and expert testimony Appellee-Applicants have offered or planned to offer at trial. Appellee-Applicants have represented that their responses to these requests will be filed with the Court by Monday, September 24, 2007. The Court will thereafter take Appellant's requests under advisement.

4.      Sugarbush Woods Circle, so-called, is the circular terminus of TH55.

5.      Appellant's property is located within Sugarbush Woods Circle.

6.      Appellee-Applicants propose to subdivide their 16.6± acre parcel of land into four lots, as follows: Lot 1 (2.8± acres), Lot 2 (3.2± acres), Lot 3 (4.4± acres), Lot 4 (6.2± acres).

7.      The proposed lots would be accessed by two proposed driveways: Lots 1 and 2 would be accessed by a driveway extending north-northwesterly from TH55, near its intersection with German Flats Road; Lots 3 and 4 would be accessed by a driveway extending northerly from the northerly-most point of Sugarbush Woods Circle.

8.      Appellee-Applicants received a curb cut permit for the proposed driveway accessing Lots 3 and 4.  That driveway is proposed to follow the track of a previously-constructed logging access road.  The logging access road appears to have been constructed in 2003.

10.     Portions of Sugarbush Woods Circle and/or TH55 have steep slopes, including slopes of up to 22% grade.

Motion to Limit Testimony

Appellee-Applicants moved on January 19, 2005[3] to limit Appellant's testimony at trial by excluding testimony related to TH55 and the culvert installed by the Town under Sugarbush Woods Circle, on the grounds that the Court lacks jurisdiction over these Town assets. Appellee-Applicants' motion was "refined" in a letter filed with the Court on June 26, 2007, in which Appellee-Applicants ask the Court to issue an order prohibiting evidence of the following: road layout, stormwater runoff and siltation, applicable road standards, the location of the town road in relation to the proposed access road(s), modification to the access road, dangerous access to/from the town road, and access requirements.

The road standards in the Town's Land Use & Development Regulations ("Regulations") apply to all proposed public roads and to private roads serving four or more lots.  Regulations § 7.7(A).  Even though TH55 is an existing public road, evidence related to it is relevant in the pending appeal pursuant to Regulations 7.7(I), which states that "[t]raffic to be generated by the proposed subdivision shall not result in unreasonable traffic congestion or exceed the capacity of roads and intersections in the vicinity of the subdivision" and provides that necessary mitigation measures, including improvements to existing public roads, may be wholly or partly the responsibility of the applicant.  See, e.g., Regulations § 7.7(I)(4).  Therefore, testimony and other

---

[3]  See footnote 1, above, for explanation of delay.

evidence regarding TH55 and its intersections with German Flats Road, particularly to the extent that the proposed driveways for the subdivision will increase traffic congestion and strain the capacity of TH55 and Appellant's driveway to an unreasonable degree, are relevant to the standards that apply to the pending application

Furthermore, testimony and other evidence regarding stormwater runoff and siltation is relevant to the pending application pursuant to Regulations § 7.5, which states that the DRB "may require such temporary and permanent stormwater management and erosion control measures as may be necessary to control surface runoff, sedimentation and water pollution on-site and downstream from the proposed subdivision." Regulations § 7.5(A). In particular, Regulations § 7.5(G) provides that the DRB may require the subdivider to contribute to capacity improvements to prevent an overload of downstream drainage capacity and facilities outside of the area of the proposed subdivision. Testimony and other evidence regarding the culvert installed by the Town is therefore relevant and will be admitted at trial insofar as it relates to the surface runoff, sedimentation and water pollution impacts of the proposed subdivision or to the issue of whether the proposed subdivision will require improvements to the existing stormwater management and erosion control measures, so as to minimize or eliminate its negative impacts.

For the foregoing reasons, Appellee-Applicants' motion in limine to exclude trial testimony and other evidence on these issues is hereby DENIED. We reserve for trial and deliberations the determinations of whether the specific evidence offered at trial is relevant, admissible and worthy of affording sufficient weight so as to rely upon it in our final decision.

Motion for Partial Summary Judgment

Appellee-Applicants move for summary judgment on part or all of each of Appellant's questions in her Statement of Questions as amended on June 13, 2007. Appellee-Applicants' motion is organized into six categories addressing the following: Questions relating to the condition of TH55 (Questions 1(B), 1(F), 1(G), 1(H), 1(J),[4] and 1(K)); Questions relating to the culvert across TH55 below Appellant's driveway (Questions 1(C), 1(D), and 1(E)); Questions allegedly raising new issues in this appeal (Questions 1(C), 1(F), and 1(G)); Question 1(H) relating to a neighborhood well located on Appellee-Applicants' land; the purported deemed admission by Appellant of certain Requests to Admit due to a failure to adequately deny; and finally the adequacy of notice to abutting landowners.

---

[4] That part of Question 1(J) that deals with light pollution is not part of Appellee-Applicants' motion, and remains for trial.

3

Question 1(A) is not addressed in Appellee-Applicants' motion for summary judgment and therefore remains for trial.

Questions relating toTH55

Question 1(B) asks whether "the subdivision, as laid out, maintain[s] reasonable road layout and building locations and/or lot area and configuration."  The condition of TH55, to the extent it is negatively impacted by the proposed subdivision, is relevant to the pending appeal pursuant to Regulations 7.7(I).  Question 1(B), moreover, is not limited to road layout but also addresses building locations and lot area and layout.  Summary judgment is therefore DENIED as to Question 1(B).

Question 1(F) asks whether the proposal has met applicable road standards.  Pursuant to Regulations 7.7(I), Appellee-Applicants may be responsible for improvements to existing public roads, and the design and condition of TH55 is therefore relevant to this appeal.  Summary judgment is therefore DENIED as to Question 1(F).

Question 1(G) asks whether the proposal contains accurate information "including but not limited to" the location of TH55, the location of the subdivision's intersection with TH55, and the topographical characteristics of the proposed lots and access road.  Appellee-Applicants assert that TH55 is accurately depicted in the proposal, with the road location derived from orthophotographs.  Appellant's expert, Richard DeWolfe, P.E., states in his affidavit that this use of orthophotographs is not in conformity with professional standards.

The location and width of TH55 have been conclusively determined by the Washington Superior Court to be "as they appear on the Roth survey."  Bren v. Eardensohn, Docket No. 320-5-05 Wncv (Washington Superior Court, Jan. 22, 2007) at 5.  The Roth survey, filed with this Court on February 13, 2007, was a 1963 survey by John Roth which originally laid out the course of TH55.  Id. at 1.  It appears that a dispute exists as to whether the site plans for the proposed subdivision accurately depict the location and width of TH55 by conforming to the Roth survey.  We look forward to receiving each parties' evidence on this issue at trial.  Summary judgment is therefore DENIED as to Question 1(G).

Question 1(H) asks whether the proposal adequately protects the neighborhood well located on Appellee-Applicants' land.  Appellee-Applicants aver that their proposal will not harm the neighborhood well, and support this assertion with a letter from the Agency of Natural Resources ("ANR"), Department of Environmental Quality ("DEQ"), stating as follows: "Based on the isolation distances written in the Environmental Protection Rules, Chapter 21, Water

4

Supply Rules, a radius of 200 ft is required for sources of contamination that are downgradient of the well, and 400 ft for sources of contamination that are upgradient of the well. I have reviewed the plans for this project and all isolation distances have been met." Appellee-Applicants' Exhibit F. Appellant responds that the ANR letter does not address potential harm to the well caused by road improvements or blasting for development. Appellee-Applicants reply that they will not be grading or blasting the road, but they do not address potential impacts to the well from blasting for development. The site plans on file with this Court indicate that on at least one occasion, Appellee-Applicants contemplated re-grading a portion of TH55 located within the well shield for the neighborhood well. While that contemplated action may have been abandoned following the decision of the Washington Superior Court, it seems prudent for this Court to hear all relevant evidence on whether the currently proposed development will harm the shared water supply. Summary judgment is therefore DENIED as to Question 1(H).

Question 1(J) asks whether the project will adversely impact Appellant's property "by, among other matters, causing undue light pollution, wastewater run-off, dangerous access to/from the Town road, and other impermissible adverse [e]ffects." Appellee-Applicants do not seek judgment as to the issue of light pollution embedded in Question 1(J), and that part of the Question therefore remains for trial. As to the remainder of Question 1(J), as discussed above in the context of Appellee-Applicants' motion in limine, the proposed subdivision's impact on traffic in the vicinity (including access to TH55) is relevant in this appeal pursuant to Regulations § 7.7(I); its impact on wastewater runoff is relevant pursuant to Regulations § 7.5. Summary judgment is DENIED as to Question 1(J).

Question 1(K) asks whether the project conforms to fire safety and emergency access requirements. Appellee-Applicants assert that because they intend to install sprinkler systems for Lots 3 and 4, their plans do not raise any issues regarding fire and emergency access. Chris Kathan, Fire Chief for the Town, avers that in his personal opinion, the "Town road, around the circle, is not safe for emergency vehicles or trucks. I do not believe a fire truck or emergency vehicle can make it up to the two (2) lots proposed by the Eardensohns." Kathan Aff. at ¶8.

While the installation of sprinkler systems may reduce the immediate need for access for fire trucks, it does not eliminate it. Further, there remains the question of access for other emergency vehicles, such as police and ambulance service vehicles. Richard Robinson, a member of the Town's road crew who plows and maintains TH55, states in mud season he "often can't make it up [TH55] at all and that that is true sometimes during the winter. Robinson

5

Aff. at ¶8. Robinson lists an impressive number of accidents that Town trucks have suffered on TH55 at the circle, id. at ¶12. As there appear to be material facts in dispute as to whether the proposed subdivision conforms to safety and access requirements, summary judgment is DENIED as to Question 1(K).

Questions relating to the culvert

Appellee-Applicants state that the "town installed a culvert across [TH55], below Bren's driveway. Bren claims the culvert discharges stormwater, silt and pollution onto Bren's land. However, there is no evidence this is occurring." Mot. for Summ. J. at 4. According to the affidavit of Town road crew member Richard Robinson, the culvert was installed to mitigate runoff from the logging road Appellee-Applicants constructed, a logging road which is proposed to be improved to provide access to Lots 3 and 4. Mr. Robinson states that a "few years ago, the Eardensohns built a logging road. There was a lot of run-off over the Town road. Because of this, we installed a culvert below the Eardensohns' logging road. The other side of the culvert goes onto the Bren property." Robinson Aff. at ¶14.

As discussed above in the context pf Appellee-Applicants' motion in limine, questions regarding stormwater runoff and siltation are relevant to the pending application pursuant to Regulations § 7.5, in particular Regulations § 7.5(A) (providing that the DRB "may require such temporary and permanent stormwater management and erosion control measures as may be necessary to control surface runoff, sedimentation and water pollution on-site and downstream from the proposed subdivision") and Regulations § 7.5(G) (providing that the DRB may require the subdivider to contribute to capacity improvements to prevent an overload of downstream drainage capacity and facilities outside of the area of the proposed subdivision).

Question 1(C) asks whether the proposed development will create unreasonable stormwater runoff and siltation onto neighboring properties and whether the proposal incorporates appropriate stormwater management and erosion control practices. Question 1(D) asks whether the proposed subdivision will create unacceptable water pollution onsite and downstream and whether the slope and drainage patterns are such that an adverse impact on Appellant's property is inevitable. Questions 1(C) and 1(D) appear to raise disputed questions of fact, or mixed fact and law that are relevant to Regulations § 7.5. Summary judgment is therefore DENIED as to Questions 1(C) and 1(D).

Question 1(E) asks whether the proposal has met all the requirements of Regulations § 7.5(A) and (B). Appellee-Applicants note that Regulations § 7.5(A) and (B) "is not a

6

requirements checklist," but rather provides the DRB in the first instance and this Court in the second instance with discretionary power to impose certain conditions and controls on the proposed subdivision. Appellee-Applicants further note that the record here indicates that the DRB did impose some stormwater conditions on the project, and state that "there is no evidence [that] the DRB acted arbitrarily with respect to its discretionary powers under § 7.5." Appellee-Applicants argument might be persuasive on this point if this appeal were on the record, but as this appeal is de novo, the discretionary powers provided to the DRB are now available to the Court, which sits in the place of the DRB as if no decision had been rendered below. Summary judgment is therefore DENIED as to Question 1(E).

Questions allegedly raising new issues

Appellee-Applicants assert that Questions 1(C), 1(F) and 1(G) in Appellant's Amended Statement of Questions (filed on June 13, 2007) raise new issues in this appeal and should therefore be rejected as Appellee-Applicants are prejudiced by Appellant's "new theories and tactics . . . on the eve of trial."

Question 1(C) asks whether the proposed development will create unreasonable stormwater runoff and siltation onto neighboring properties and whether the proposal incorporates appropriate stormwater management and erosion control practices. This Question is similar to Question E of Appellant's original Statement of Questions, which raised the issue of stormwater and siltation onto neighboring properties. Appellee-Applicants were put on notice by the original Question E that stormwater and siltation would be at issue in this appeal, and summary judgment as to Question 1(C) is therefore DENIED.

Question 1(F) asks whether the proposal has met applicable road standards. This Question is substantially similar to Question H of Appellant's original Statement of Questions, and summary judgment is therefore DENIED as to Question 1(F).

Question 1(G) asks whether the proposal contains accurate information. While this issue is not specifically raised in Appellant's original Statement of Questions, it appears to have become an issue following the decision of the Washington Superior Court determining the location and width of TH55. We further note that whether the site plan and other application materials for a proposed subdivision accurately depict the site and surrounding roads is always a relevant issue in land use review determinations. The depiction of TH55 on the site plan now appears to be a disputed fact. We look forward to the presentation of evidence as to whether the

site plan is in conformance with the established location of TH55.[5]  Summary judgment is therefore DENIED as to Question 1(G).

The neighborhood well

Question 1(H), asking whether the proposal adequately protects the neighborhood well located on Appellee-Applicants' land, is discussed above in the section on Questions relating to TH55.

Deemed admission

Appellee-Applicants submitted nineteen Requests to Admit to Appellant on May 25, 2004.  Appellant responded on June 25, 2004, denying each request and noting in most responses that ""[t]his answer cannot be fully answered as I have not yet retained an expert."  On December 8, 2004, Appellant disclosed her expert Richard DeWolfe, P.E., along with his expert opinions.  On August 1, 2007, Appellant filed with the Court her Supplemental Responses to Appellees' Requests to Admit.  Appellee-Applicants seek to have their requests deemed admitted on the ground that Appellant's responses are insufficient, citing Gallipo v. Rutland, 2005 VT 83, 178 Vt. 244.  In Gallipo, the Supreme Court held that the defendant's failure to respond to requests to admit constituted a deemed admission of those requests.  Id. at ¶22.

Gallipo is inapposite to this appeal because here Appellant provided both a response and a supplemental response to Appellee-Applicants' Requests to Admit, while in Gallipo the defendant failed to respond at all.  Given "the desirability of resolving litigation on the merits," Desjarlais v. Gilman, 143 Vt. 154, 159 (1983), we decline to deem Appellee-Applicants' Requests as admitted.  Summary judgment is therefore DENIED as to the "deemed admitted" issue.

Notice to abutters

Appellant's Question 2 of her current Statement of Questions asks whether the permit is valid where one or more of the adjacent property owners were not notified of the subdivision application and the subsequent proceedings before the DRB.  Appellee-Applicants, in their motion for summary judgment, assert that they sent notice to all the adjoiners shown on the grand list.  Appellee-Applicants also note that Appellant has so far failed to name the adjoining landowner(s) who allegedly did not receive notice.

---

[5]  We note that the DRB in the first instance and this Court on appeal have some discretionary authority to allow for some amendments and revisions to applications and site plans.

In her response to the motion, Appellant refers the Court to her affidavit at ¶23, wherein she states that "at the first hearing [she] attended" (which appears from the Minutes submitted as Appellee-Applicants' Exhibit B to be the February 18, 2004 DRB hearing) she informed the Town and Appellee-Applicants that two other abutters who own or owned property with access to Sugarbush Woods Circle Road did not receive notice of the application or the hearings. No record of her comments regarding lack of notice to adjoining landowners appears in the above-mentioned Minutes. It is curious that Appellant would not name those abutters in her Statement of Questions, her response to the instant motion, or in her affidavit. Indeed, the withholding of the names of the allegedly un-notified abutters "smacks too much of a trial by ambush," <u>U.S. v. Kelly</u>, 420 F.2d 26, 29 (2d. Cir. 1969). The mere allegation that some unnamed adjoining owners were not notified does not rise to the level of "specific facts showing there is a genuine issue for trial" as required by V.R.C.P. 56(e). Appellee-Applicants' motion for summary judgment is therefore GRANTED as to Question 2 of the Amended Statement of Questions.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants' motion <u>in limine</u> to limit testimony and evidence at trial is **DENIED**. Appellee-Applicants' motion for summary judgment is **GRANTED** as to Question 2 of Appellant's June 13, 2007 Statement of Questions and is otherwise **DENIED**.

Done at Berlin, Vermont, this 25th day of September, 2007.

_____
Thomas S. Durkin, Environmental Judge