**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Earle T. COOK, Defendant-Appellant.**

**No. 17128.**

United States Court of Appeals,
Seventh Circuit.

Sept. 25, 1970.

Rehearing Denied Nov. 25, 1970.

Ronald P. Alwin, Chicago, Ill., for defendant-appellant.

William J. Bauer, Thomas A. Foran, U. S. Attys., Jeffrey Cole, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Michael B. Nash, Richard G. Schultz, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

The defendant, Cook, was charged in the United States District Court for the Northern District of Illinois in a two count indictment with violating 18 U.S.C. § 32 by placing on November 12, 1967 a destructive device on a civil aircraft with intent to damage the aircraft (Count I) and by causing damage to a civil aircraft (Count II). Judgment of conviction on each count was entered upon a jury verdict of guilty on February 6, 1968, and Cook was sentenced to twenty years on each count, the sentences to run concurrently. This is an appeal from the judgment of conviction and sentence.

It was conceded, accepting the evidence in the light most favorable to the government, that the evidence was more than adequate to support the verdict and Cook did not urge on appeal that the conviction was against the weight of the evidence. He does, however, in his appeal urge seven technical grounds for reversal, being in regard to certain claimed improper governmental procedures prior to the trial and certain judicial errors both at the pretrial and trial levels.

The evidence, to which further particularized reference will be made in connection with specific points raised,

tended to establish the following factual situation.

Beginning some four years prior to the incident directly involved, Cook, who had some history of marital discord, made approaches to individuals to attempt to make arrangements for his wife to be killed. On some of these occasions, there was discussion of the development of a device to set off explosives. On November 12, 1967, Cook drove his wife to the airport where she was taking a plane to California. He first checked two bags for his wife with a skycap, receiving two stubs therefor. Cook then returned to his car and took out a third bag and checked it through another skycap. He then gave the stubs for two of the bags to his wife but did not give her the stub to the third bag in which a bomb was secreted. There were some 81 persons on the 727 jet plane. Some place over Colorado a bomb exploded in the baggage compartment depressurizing the aircraft, which was nevertheless able to proceed on to San Diego without further mishap.

The FBI commenced immediate investigation which included interviews with the spouses, friends and relatives of all the passengers on the plane. Cook was interviewed on November 14, 1967 and on November 17, 1967 he agreed to go to the FBI office in Chicago for an interview. While the interview was in progress, other FBI agents, acting upon a search warrant, removed a number of items from Cook's residence including a vise, pieces of wire and other electrical items. After the interview, which was terminated by Cook, he was driven back to his office at St. Charles, Illinois, where he was arrested and charged with the offenses involved herein. The FBI investigation indicated that the bag in which the bomb had exploded was the one involving the stub which Cook had not given to his wife. The total amount of the insurance payable if Mrs. Cook had been killed incident to a commercial air crash was $117,500.

## DENIAL OF MOTION FOR DISCOVERY

The point on appeal most forcibly urged by Cook, and the one we deem most susceptible of requiring a reversal, arose out of the district court's ruling on a motion to produce.

On December 6, 1967, within the time extended by the court, Cook filed seven separate pretrial motions, none of which was accompanied by a brief or supporting authority in other form. The motion here involved is the motion for discovery which in its entirety reads as follows:

"Now comes the defendant, EARLE T. COOK, by his attorney, JACK G. STEIN, and respectfully moves this Court to enter an Order permitting defense counsel to inspect and copy results or reports of scientific and laboratory tests made of any evidence to be presented by the Government in its case against the defendant. The defendant further moves that the Court allow the defendant and such necessary experts as may be necessary to examine said evidence at a place and time agreeable to this Court."

On December 14, 1967, the government filed its answers to defendant's motions, which, *inter alia,* objected to the granting of the foregoing motion for discovery.

Cook filed no response as far as the record shows to the government's objections nor as far as we can determine took any other action to attempt to convince the court that the government's objections to the granting of the motion were invalid.

On December 19, 1967, the district court made the following order:

"Defendant's motion that he and such experts as may be necessary is [sic] given leave to examine any physical evidence which the government intends to introduce in its case against the defendant priot [sic] to January 10th at a place mutually agreeable to the government and the defendant. The defendant's motion to

permit counsel to inspect and copy results or reports of scientific and laboratory tests made of any evidence to be presented by the government in this case against the defendant is denied at this time without prejudice."

Because of the ultimate result we reach in this opinion, it is necessary to give some particularized attention to the government's answer objecting to the granting of the motion. The answer first pointed out that local Rule 13 of the district provided that any party filing a contested motion calling for a decision of the court should file citations of authority and that under the rule the court on its own motion might strike a motion not supported by a memorandum. The court here did not, at least in terms, purport to strike the motion because of noncompliance with the local rule. As the government's answer conceded, Cook was apparently relying on Rule 16(a) of the Federal Rules of Criminal Procedure,[1] and it could not ordinarily be expected that a necessity existed for a district judge to have cited to him by way of memorandum the Federal rules. However, Rule 16(a) was substantially amended effective as of July 1, 1966 and at the time of the ruling

on the discovery motion, approximately a year and a half later, there were judicial indications that both under Rule 16(a) and 16(b) a showing of materiality and reasonableness was necessary although this requirement was contained only in 16(b). These authorities were cited to the court by the government.

While subsequent interpretation of Rule 16(a) has now reached the place that it is generally conceded, upon application, the discovery provided for therein should be granted as a matter of right (1 Wright, Federal Practice and Procedure p. 501 (1969)), nevertheless, it is equally clear that in 1967 this construction, although somewhat inevitable, had not been reached. Therefore, it would appear that Cook would have been well-advised to have complied with local Rule 13 and when objections were lodged by the government to the granting of the motion, it then being apparent that the motion might not be routinely granted, authority opposing the position of the government certainly should have been cited.

In its answer opposing the granting of the motion, the government next emphasized that the rule used the language,

---

1. The pertinent portion of Rule 16(a) reads as follows:

"(a) Defendant's Statements; Reports of Examinations and Tests; Defendant's Grand Jury Testimony. Upon motion of a defendant the court may order the attorney for the government to permit the defendant to inspect and copy or photograph any relevant. * * (2) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government. * * * "

Because of its material bearing on the matter under discussion, we also set forth pertinent portions of subsections (b) and (c) of Rule 16.

"(b) Other Books, Papers, Documents, Tangible Objects or Places. Upon motion of a defendant the court may or-

der the attorney for the government to permit the defendant to inspect and copy or photograph books, papers, documents, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, upon a showing of materiality to the preparation of his defense and that the request is reasonable.

"(c) Discovery by the Government. If the court grants relief sought by the defendant under subdivision (a) (2) or subdivision (b) of this rule, it may, upon motion of the government, condition its order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, upon a showing of materiality to the preparation of the government's case and that the request is reasonable."

"the court *may* order" citing Peek v. United States, 321 F.2d 934, 941–942 (9th Cir. 1963), cert. den. 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964), and Ginsberg v. United States, 257 F.2d 950, 956 (5th Cir. 1958). Both cases involved the application of Rule 16 prior to 1966 and under the rule as it then existed both cases properly stated that the matter of allowance of discovery was discretionary with the judge.

■ No doubt, technically, it may be stated that the granting of relief to the movant under Rule 16(a) is still a matter within the discretion of the court, nevertheless it also appears under the present interpretation of Rule 16(a) if the motion is in proper form and timely made, a denial of the motion would be an abuse of discretion. Indeed, this court has stated in United States v. Isa, 413 F.2d 244, 248 (7th Cir. 1969), that a defendant has "the right to an order" permitting him to inspect under Rule 16(a) absent a showing by the government under 16(e) dealing with protective orders. This court in *Isa* (at p. 248) quoted with approval from United States v. Projansky, 44 F.R.D. 550 (S.D.N.Y. 1968), "it is wholly different, and wholly unsupportable, to say the Government may sit back, invoke the old generalities, and conceal from the defendant * * * unless the defendant shows some kind of 'particularized need' almost never identified by the prosecution because it is almost never possible to imagine, let alone reply."

It has also been stated by one respected authority that to obtain discovery under Rule 16(a) the defendant must show that the items sought are "relevant" in contrast to the showing of materiality and reasonableness necessary under 16(b). 8 Moore, Federal Practice § 16.03[1], pp. 16–17 (2d ed. 1969).

■ While it is true in construction of statutes, and presumably also in the construction of federal rules, that the word "may" as opposed to "shall" is indicative of discretion or a choice between two or more alternatives, the context in which the word appears must be the controlling factor. A good statement on the subject is contained in Thompson v. Clifford, 132 U.S.App.D.C. 351, 408 F.2d 154, p. 158 (1968), where the court stated:

> " 'May' ordinarily connotes discretion, but neither in lay nor legal understanding is the result inexorable. Rather, the conclusion to be reached 'depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer a discretionary power or to impose an imperative duty.' " (footnotes omitted)

On the other hand, we are not unmindful of equally well established rules of construction that effect must be given, if possible, to every word, clause and sentence of a statute. United States v. Montgomery Ward & Co., 150 F.2d 369, 379 (7th Cir.), remanded and vacated as a moot cause, 326 U.S. 690, 66 S.Ct. 140, 90 L.Ed. 406 (1945), citing Kent's Commentaries (13th Edition 1884) 462. *See also* Central National Bank v. Continental Casualty Co., 182 F.2d 407, 409 (7th Cir. 1950).

■■ A further suggestion of latitude to the district judge in the application of Rule 16(a) (2) (the portion of the rule here involved) is found in the language of subdivision (c), "[i]f the court grants relief sought by the defendant under subdivision (a) (2). * * * " Therefore, while we are of the opinion that the district judge in the case of a motion under Rule 16(a) which is in proper form and timely made, has little, if any, discretion as to denying the motion in the absence of particularized reasons advanced under 16(e), nevertheless, and in part because of the use of the discretionary words bringing into play a conflict between well-established rules of construction, we are also of the opinion that at the very least the district judge, as a part of his general latitude in controlling proceedings before him, has the power to control the chronology of discovery procedures. As long as basic or vested rights are not violated it would

seem that the judge should have the same right of latitude in supervision over pre-trial procedures as he does of the conduct of the trial itself. *See* Walsh v. United States, 371 F.2d 436, 438 (1st Cir. 1967).

In this view of the matter, the district court's form of order becomes particularly significant. Cook was granted leave to examine all of the physical evidence intended to be introduced in the case against him, which leave included "such experts as may be necessary." It was against this background of inspection of the physical property, which would have been the basis of the reports of scientific and laboratory tests made of this evidence, that the judge denied the motion to inspect the reports "at this time without prejudice."

It seems clear to us that the district judge even though with some residuum of anti-fishing expedition feeling was stating to the defendant that "as a first step of your discovery you should look at the physical evidence with your experts and then, since I am not entering a final denial but merely one without prejudice at this time, you may then come back if it is indicated as being necessary and ask for the inspection of the reports." As a matter of fact, the government as a final part of its answer to this particular motion, while urging that the motion for inspection and copying of the reports be denied, requested that all objects be permitted to be inspected, stating: "The inspection will therefore include all objects subject to such experimentation which the Government obtained from all searches and which were secured from the remains of the explosive device on the American Airlines aircraft referred to in the indictment."

The government in its answer did move, in the event the court should grant the inspection, that under Rule 16(c) it have inspection and copying of any scientific reports of the defendant.

As indicated hereinbefore, insofar as the record shows, no further effort of any kind was made to demonstrate to the court the incorrectness of the government's position nor to follow up the implicit invitation in the judge's denying the motion "without prejudice."

From our present point of view, realizing that no other result could have been reached in United States v. Isa, 413 F.2d 244 (7th Cir. 1969), we may wonder why the government took the position it did in opposing Cook's motion for inspection. It would appear from the record that the FBI scientific tests were simply that, and did not involve expert judgments as such, but rather opinions based upon clearly demonstrable physically objective facts. If the experiments had called for an exercise of judgment, no doubt the government as an adversary would have been desirous of keeping the judgment opinions and the facts on which they were based from the defendant and his experts as long as possible. This factor, however, seems non-existent in the case before us.

Further, in the decision handed down just thirteen days before the government filed an answer to the motion, another district judge in the same district from which this appeal arises strongly criticized the government in a comparable situation for opposing discovery in proper cases.[2] Nevertheless, the government chose to ignore the admonition of the other district judge and did oppose the granting of the motion and therefore it is necesary on this posture of the facts to determine whether

2. "We think the Government should be prepared to fulfill its duties and should tender proper information upon request in motions like the instant one. * * * Blanket refusals to supply particulars or discovery without legal justification, and compelling trial courts to sift through a series of requests such as we have done in the case at bar, is a pure waste of judicial manpower and hours, and is not in the best interests of proper judicial administration. We invite the Government to reevaluate its thinking in this area, * * *" United States v. Tanner, 279 F.Supp. 457, 478 (N.D.Ill.1967).

in so doing it participated in the production of reversible error.

In at least one circuit, a decision involving the present Rule 16 found the application for relief under the discovery rule to be a matter within the sound discretion of the court and reviewable only for an abuse of discretion. Hemphill v. United States, 392 F.2d 45 (8th Cir. 1968). This appears to be an exception to the presently accepted view. The court found no abuse of discretion particularly in the absence of any showing that the defendant was prejudiced. Involved was discrepancy in the scientific analysis of the contents of a package which the court held did not amount to a fatal variance between the indictment and proof. The court also pointed out that the variation was seized upon in cross-examination and closing argument. In the case before us, cross-examination was directed to eliciting admissions from the scientific test witnesses that the tools and bomb fragments were mass produced, could be obtained anywhere and that crimp marks could have been made by a variety of tools, any of which were commercially available in large numbers. Cross-examination further elicited that the pieces of wire were not necessarily from a continuous coil of wire. Also in final argument the position was taken by defense counsel that the scientific evidence against Cook was only circumstantial and equivocal. Nevertheless, Cook strenuously contends that he was prejudiced by not having the opportunity on a pretrial basis to know what the scientific experts would testify. We must accept this position and if in the overall picture a motion was improperly denied we must reverse.

To determine whether there is what may be called a totality syndrome adequate to vitiate any error in the fact that copies of the scientific test reports were not made available to Cook in advance of trial it is necessary that we examine other significant elements bearing on the present issue.

In accordance with the court's order, Cook and his attorney did appear at the FBI offices and did view the physical evidence the government planned to introduce at trial. Cook brought no experts with him at this time nor did he ever subsequently request that one be allowed to examine the evidence. Cook now complains that he could not "know what kind of experts to bring with him" and asserts that when in his motion he asked that he "and such necessary experts as may be necessary" be permitted to examine said evidence he was predicating this on a favorable ruling on the motion for inspection of the reports. Having learned of the court's order that he was not at this time to have the reports, he apparently did nothing in the way of attempting to secure an expert in the explosive field or in mechanical engineering to take with him to view the evidence. We cannot conceive that competent counsel[3] could not have obtained and taken with him a scientific expert in the general fields involved who, if not in a position to have commented directly on the evidentiary potential of the physical evidence, would have been able to have directed counsel to experts in the appropriate fields. Indeed, if Cook's counsel did feel helpless in determining what type of expert or experts to take with him to the FBI offices the situation implicitly called for his then going back to the court, reminding the court that the denial of the reports had been "without prejudice" and that it was necessary that the reports be examined so that the proper expert or experts could be selected by the defendant. Cook did not do so nor at any time subsequent to the visit to the FBI office was there any effort made to move the court from its previous nonprejudicial denial of motion.

While the phrase "without prejudice" seems to have no discoverable case his-

---

3. Counsel who tried the case were not involved in this appeal. There seems to be no suggestion, direct or implied, that trial counsel were less than fully competent.

tory, at least as far as we have been able to determine, in connection with rulings on motions under Rule 16, nevertheless, the phrase is certainly not a stranger to the law. It most frequently is tied to a case dismissal and it is well established that it carries no res judicata effect and forecloses no issues. It has been stated that the words "without prejudice" show an intention further to litigate issues. Brunswick Corporation v. Chrysler Corporation, 287 F.Supp. 776, 778 (E.D.Wis. 1968).

Cook through his counsel obviously appears consciously to have chosen not to litigate this particular issue further and indeed to make nothing further of the application. This remained true from the time the court denied "without prejudice" until this appeal. Cook filed a motion for a new trial in the court below and although numerous grounds, thirteen in all, for a new trial were specified therein, the motion was silent as to this particular ground.

■ If it were standing alone we would find no significance in failing to specify the denial of the discovery motion as a ground for a new trial. Under federal procedure, it is not necessary to file a motion for a new trial in order to have reviewed on appeal questions properly preserved at trial. Federal Rules of Appellate Procedure, Rule 4; United States v. Mountain State Fabricating Company, 282 F.2d 263, 265 (4th Cir. 1960).[4]

However, examining the matter in the totality syndrome context, we find some significance in the failure to specify the claim of denial of discovery as being consistent with what apparently was a conscious determination not to raise further at the trial level the issue involved. To have done so would have permitted the trial judge, who heard all of the evidence and who would have been in the best position to have judged the prejudicial

effect of the lack of discovery, to have passed on this particular issue. He did not have the matter again brought to his attention nor was it brought to his attention otherwise, including objections to the admissibility of the testimony or by a motion for a continuance for the purpose of securing experts who could testify to the contrary.

Cook relies heavily on United States v. Kelly, 420 F.2d 26 (2d Cir. 1969), in which the court on the facts before it spoke of the course of the government as smacking too much of trial by ambush in violation of the spirit of the discovery rules. We do not find, however, that the facts in *Kelly* make it applicable here. There is similarity in that the government opposed the broad request of the defendant as being a fishing expedition and the trial judge, apparently without criticism from the Court of Appeals, denied the broad discovery sought but did permit inspection of the chemical analysis of certain involved drugs. This information was furnished, but thereafter the government conducted a new type of drug test as to which they did not advise the defendant as required by Rule 16(g). The defendant did not become aware of the new test until after the testimony of the prosecution's first witness. It is significant that the defense made a motion for a continuance to carry out its own version of the test in question, which motion was denied. In *Kelly*, steps were taken not only to preserve a record but also to give the trial court an opportunity to remedy the situation at the trial level. This was, as far as we can ascertain, consciously a matter refrained from by Cook.

■ Where parties, even in a criminal case, knowingly and deliberately turn down a course of procedure which at the time appears to be to their best interest, they cannot be permitted at a later time after a decision has been rendered adverse to them, to obtain a retrial accord-

---

4. "A motion for new trial is not essential in this jurisdiction to entitle a party to a review by the Court of Appeals. This has been so repeatedly decided as not to require the citation of authorities." Aaron v. United States, 155 F. 833, 838 (8th Cir. 1907).

ing to the procedure which they had voluntarily discarded and waived. Carruthers v. Reed, 102 F.2d 933, 938 (8th Cir.), cert. den. 307 U.S. 643, 59 S.Ct. 1047, 83 L.Ed. 1523 (1939).

The combined impact of the various elements comprising what we have termed the totality syndrome [5] we find adequate to eliminate any claim of error on the district court's ruling on the motion for discovery.

■ While it has been stated that the reason for broader discovery in criminal cases is not the same as in civil cases, *i. e.*, the search for truth, *see* 8 Moore Federal Practice § 16.02[1], p. 16–11 (2d ed. 1969), nevertheless the result of the substantial broadening of Rule 16 has placed in the hands of the criminal defendant materials from prosecutors' files which were not previously available to him. We do not believe that this protective device should be subverted in its use so as to become a gaming device with which to gain an undeserved acquittal. We do not deem that the liberalized rule requires the forcing of discovery upon a defendant and if he consciously and deliberately chooses not to utilize the remedy after only a casual effort he can not complain that he was prejudiced on appeal.

While we find no reversible error in the court's ruling on the motion for discovery, we do so on the narrow issue of the facts before us.

We find the remaining grounds for reversal urged by Cook less troublesome but shall consider each of them as raised.

## CLAIM OF FIFTH AMENDMENT PRIVILEGE

Cook contends that testimony of a FBI agent to the effect that Cook had terminated an FBI office interview and refused to submit to further questioning, thereby "exercising his Fifth Amendment privilege * * * in the face of accusation," requires reversal, citing Miranda v. Arizona, 384 U.S. 436, 468, n. 37, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Krol, 374 F.2d 776 (7th Cir. 1967); United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968); United States v. Kroslack, 426 F.2d 1129 (7th Cir. 1970).

■ We do not disagree with the principle urged by Cook that it is impermissible to penalize an individual for exercising his Fifth Amendment privilege while he is under custodial interrogation. However, we do not find this principle applicable to the situation now before us. Cook contends the challenged testimony was given over defense objection, which assertion is controverted by the government, and examining the record we find the government's position is correct. Special Agent Parrish of the Federal Bureau of Investigation had testified at length in narrative form regarding conversation between Cook and himself in the FBI office in Chicago on November 17, 1967. When the agent had reached in his testimony the point of coverage toward the end of the interview in the FBI office, he testified as follows: "I said, 'Mr. Cook, when you came into our office you were extremely confident and sure of yourself.' I said, 'Now you

5. The significant elements are failure to cite supporting authority under local Rule 13; no response to government's objections; failure to point out incorrect statements of law therein; a partial granting of the motion with the remainder of the motion being only denied "at this time without prejudice"; an actual examination of all of the physical evidence with the right to have experts present; failure at any time during the trial or post-trial procedure before appeal to raise the question; failure to move the court for examination of the reports notwithstanding denial of the motion without prejudice; the fact that persistence in an effort to get the reports would have brought into play Rule 16(c) with regard to any defense experts; failure to object to the testimony on the ground involved in the trial; failure to move for a continuance following the realization of the impact of the evidence; approach during cross-examination and final argument that the expert testimony did not prove anything which would have been somewhat inconsistent with putting on one's own experts; and failure to include the issue in the motion for a new trial.

appear to be perspiring and worried.'" The agent then started into a further narrative beginning, "[a]nd he said—." Counsel for Cook who had not been objecting to the general narrative then stated "I will object to that, Your Honor." The court overruled the objection and there was no further discussion of the matter nor did Cook's counsel specify any grounds whatsoever for the objection.

The agent then proceeded to report Cook's reply to which the agent asked him why he did not tell the truth about his participation in the matter. The agent then reported Cook's reply to that matter after which the agent gave the challenged testimony, without objection, as follows:

"At this point Mr. Cook said that he wished to terminate the interview providing that the FBI would keep their promise that Mr. Baker would return him to St. Charles, so on the basis of this the interview was terminated and Mr. Cook left my office."

There was no motion to strike the testimony from the record nor to admonish the jury to disregard the matter. The challenged testimony, at least challenged on this appeal, was not referred to in the motion for a new trial, although for the reasons we have hereinbefore advanced in this opinion, we do not give persuasive significance to the omission of this particular item from the motion for a new trial.

We do find, however, that there were no objections to the testimony, either by way of advance objection or by motion to strike it from the record. The only objection made was several paragraphs in advance of the challenged testimony and that objection failed to specify any grounds for sustaining the objection.

■■■■■ The same agent had testified at a pretrial hearing as to the identical facts with regard to the termination of the interview so that counsel for Cook certainly could claim no surprise or lack of knowledge that Cook had elected to terminate the interview. Ordinarily, the admissibility of evidence cannot be

questioned in this court on grounds not presented to the trial court and failure to object ordinarily precludes error. United States v. Lyon, 397 F.2d 505, 508–509 (7th Cir. 1968), cert. den. *sub nom.*, Lysczyk v. United States, 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968). It is a good rule of practice to alert clearly and distinctly the trial judge, and opposing counsel, to every claim intended to be preserved for possible appeal. *See* United States v. Hall, 348 F.2d 837, 843 (2d Cir.), cert. den., 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965). Ordinarily, where evidence is admitted over objections but no grounds are stated for the objections, they will not be considered on appeal. Stewart v. United States, 131 F.2d 624 (5th Cir. 1942).

■■■■■ While we feel that the lack of objection to the testimony in question is dispositive as to the point involved, nevertheless, we are not unmindful of situations wherein serious and harmful error of constitutional proportions involving the admission of harmful evidence may nevertheless be subject to review notwithstanding the lack of proper objections. *See* Harrison v. United States, 128 U.S.App.D.C. 245, 387 F.2d 203, 214 (1967); United States v. Rizzo, 418 F.2d 71, 78 (7th Cir. 1969). We therefore have reexamined the testimony in question in the context in which it was given and from such an examination we are of the opinion that under no reasonable interpretation could this testimony be considered as being in derogation of Cook's right to be free of any suggestion to the jury that he had exercised his privilege under the Fifth Amendment.

Cook had been at the FBI office voluntarily under interview since approximately 10:30 in the morning and the interview was terminated by him at about 3:40 p. m. There is no suggestion in the testimony that Cook was exercising a constitutional privilege against self-incrimination. The challenged testimony immediately followed a quotation of Cook: "So far you have not told me enough to convince me, a jury or anybody else that I should admit anything." The

challenged testimony is too slender a reed to be the basis of inference of self-incrimination. The challenged testimony was the natural culmination of the testimony in narrative form as given by the agent regarding the interview.

We find no merit in this casual factual statement during the agent's recitation of the occurrences of the interview, being sequentially a part of the chronology of the actual interview. Our position is buttressed by the fact that no reference was made to the termination of the interview either during the trial or during closing argument.

## SEARCH AND SEIZURE

A search of the Cook residence was conducted by FBI agents while Cook was being interviewed at the FBI office and a number of items were taken and were transported to the FBI laboratories for scientific tests.

Among other pretrial motions, Cook filed a motion to suppress, alleging, *inter alia*, that no probable cause was shown in the affidavit for the issuance of the warrant. This matter was not pursued in this appeal. The motion to suppress continued to the effect that if the motion to suppress were denied on the grounds alleged, the court should suppress certain items which were not named in the particular search warrant. While some of these items, nineteen in all, were of the type specifically named in the warrant, such as tape and wires, being materials which were susceptible to being the component parts of an explosive device, most of the items challenged in the motion were what might be categorized as workshop tools. On this appeal, Cook has narrowed the objection down to one workshop item, being his vise. The motion to suppress was overruled and the vise was admitted in evidence over general objection. The evidentiary use of the vise was undoubtedly detrimental to Cook's defense as Special Agent Killion testified from his examination that the bell on the alarm clock found in the post-explosive debris in the airplane contained tool

marks which were produced by the vise taken from the Cook residence.

Many of the cases in the search and seizure area are not direct authority on the matter before us, involving as they do search and seizure without a search warrant as an incident to a lawful arrest which "has always been considered to be a strictly limited right." Trupiano v. United States, 334 U.S. 699, 708, 68 S.Ct. 1229, 1234, 92 L.Ed. 1663 (1948).

■ Even where the search warrant is secured, this is not deemed to be a license for unlimited search and seizure, but specificity must be involved. This particularization must be very narrowly limited in some fields, *e. g.*, identification of stolen property.

The situation before us, however, is one which we find to be covered by a holding of the Tenth Circuit which stated, in language we approve, the following:

"Search warrants are required to particularly describe the things to be seized and officers executing the warrant are authorized to seize only the property described. A general search is not permitted. * * * [citing authorities] This rule is not applicable to facts of this case. * * * All of the articles bore a reasonable relation to the pupose of the search and could be seized under the authority of the warrant." Mesmer v. United States, 405 F.2d 316, 319 (1969).

■ In determining whether the vise bore a reasonable relation to the purpose of the search and whether it could be seized under the authority of the warrant, we turn first to the affidavit before the United States Commissioner. This is a typewritten, single-spaced, six-page document giving in great particularity factual information and the source thereof concerning efforts, prior to the instant situation, on the part of Cook to kill his wife and showing that an explosive device, of what might be termed homemade character, had been placed aboard the airplane in question and had exploded. The affidavit described vari-

ous component parts of such a bomb obviously based upon the residue found in the airplane after the explosion. Equally obviously, the agent could not have known what particular tools might have been used in assembling the component parts of the explosive device and the affidavit therefore, after detailing the component parts, specified: "[A]nd other instrumentalities, all of which were designed and intended for use * * * " as a means of committing offenses under the United States Code, including 18 U.S.C. §§ 31 and 32, pertaining to destructive substances on aircraft. There could have been no reasonable doubt in the Commissioner's mind that the purpose of the affidavit was to secure a search warrant for the residence of Cook for component parts of explosive devices and the instrumentalities used in preparing such devices.

The search warrant which was issued included "other instrumentalities." We find Cook's contentions in this regard without merit.

### NEWSPAPER PUBLICITY AND THE JURY

Prior to the impaneling of the jury and during the course of the trial itself, the Chicago newspapers carried major articles concerning the factual situation involved.

█ Cook first contends that the conviction should be reversed in the exercise of this court's supervisory power because on the arrest of Cook the FBI improperly released to the press the major part of the evidence presented at the trial resulting in massive news coverage. The record fails to support this assertion. The information involved was in the affidavit for the search warrant which was a public record.

Cook next contends that inasmuch as several of the prospective jurors had heard about the case, presumably through the news media, the court should have individually questioned them out of the presence of the others to determine whether the probability or possibility of prejudice existed. The same contention was raised with regard to the detailed coverage of the trial in the newspapers to the effect that the individual jurors should have been questioned about the possible effect upon them of the trial coverage. Also, Cook contends that *voir dire* failed to go sufficiently in depth.

█ While the government on this appeal points out the very substantial extent to which the trial judge directed his attention to insuring that the jury was not prejudiced by any extraneous elements such as news items, that Cook's counsel were accorded full opportunities to question the jurors with respect to this matter and that available peremptory challenges were not exercised as to the jurors who had knowledge of the case, we do not need to decide the point upon any of these elements other than the contention that the court's inquiries as to prejudice were inadequate. We find this contention not to be supported by the record.

█ With regard to the individual interrogation, while we could rest our decision on Margoles v. United States, 407 F.2d 727 (7th Cir.), cert. den., 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969), we only need to observe that no objection was made to the judge's joint interrogation of the jurors and this issue was first raised on appeal. United States v. Fannon, 403 F.2d 391 (7th Cir. 1968), vacated on other grounds, 394 U.S. 457, 89 S.Ct. 1224, 22 L.Ed.2d 416 (1969), is dispositive of the issues here raised.

*Margoles*, of course, emphasizes that the existence of prejudicial publicity before the trial presents different legal issues than does such publicity during the trial. In the case before us, however, the court adequately handled the situation in advance of trial collectively, and during the course of the case the court inquired daily of the jury to ascertain whether they had complied with his instructions not to read or listen to anything about the case. There is no indication whatsoever that they had failed to follow his instructions and, therefore, there was no admitted contact with prej-

udicial publicity requiring separate and private interrogation. *See* United States v. Solomon, 422 F.2d 1110 (7th Cir. 1970).

## MIRANDA RIGHTS

Cook next contends that the interview at the FBI office on November 17, 1968 constituted a violation of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966). The contentions in this regard are two-faceted, being that he did not waive his *Miranda* rights and that the *Miranda* warnings given by the FBI were constitutionally insufficient.

There is substantial basis for argument that the doctrines of the *Miranda* case were not applicable here in that Cook was not in actual custody at the time of the interview, that he did not think he was in custody at that time, was not told that he was under arrest, and was free to terminate the interview at any time, which in fact he did do. United States v. Manglona, 414 F.2d 642 (9th Cir. 1969); Posey v. United States, 416 F.2d 545 (5th Cir. 1969).

Assuming *arguendo* that there were aspects of incustody interrogation, we nevertheless find no merit in Cook's contentions on this point.

Special Agent Baker went to Cook's office and asked him if he would accompany the agent to Chicago for an interview. The agent told Cook that he was free not to come, that if he did come to Chicago to speak with agents of the FBI he was free to terminate the interview at any time. The agent further told Cook that he had a right to remain silent, that anything he did say could be used against him subsequently, that he had the right not to be interviewed, that he had a right not to go anywhere with him or any other representative of the FBI, and that he had the right to have the services of an attorney because he had a right to have an attorney at that point or at any stage.

Cook replied that he was happy to go, that he wanted to be cooperative, and he saw no reason to have a lawyer.

Arriving at the FBI office he was asked by other agents if he had been advised of his constitutional rights and answered in the affirmative that he had. He nevertheless was given a second warning, including the fact that he was entitled to legal counsel. Following this he executed a voluntary appearance form which by his own admission he read and understood. Following this he was given and signed the standard FBI waiver of rights form which contained the *Miranda* warning. He again disavowed any need for counsel since "he had nothing to hide."

■ Taking language from *Miranda*, Cook contends that he should have been warned that anything he said "can and will be used against" him (384 U.S. at 469, 86 S.Ct. at 1625). We do not think that *Miranda* requires a definite assertion that the statement *will* be used. This court has held that there is no reversible error in the use of the word "might" rather than "will" in the warning. United States v. Johnson, 426 F.2d 1112 (7th Cir., 1970).

We hold that the *Miranda* warnings given to Cook, although arguably not necessary in the particular circumstances, were constitutionally adequate and that Cook knowingly waived his rights flowing from *Miranda*.

## PROSECUTOR'S ARGUMENT

Cook contends that his constitutional rights to a fair trial were violated by the prosecutor's characterization of Cook during final argument as a "sub-human man" with a "rancid, rotten mind," a "true monster." Cook also contends that the prosecutor implied to the jury that they were, in effect, doing Cook a favor by listening to him and according him his constitutional right to a trial.

■ ■ We do not find any reversible error here. The district attorney is quite as free to comment legitimately and speak fully, although harshly, upon the action and conduct of the accused, if the evidence supports his comments, as is the accused's counsel to comment upon

the nature of the evidence and the character of the witnesses which the government produces and which is favorable to him. United States v. Freeman, 167 F.2d 786, 791 (7th Cir.), cert. den. 335 U.S. 817, 69 S.Ct. 37, 93 L.Ed. 372 (1948). Even though the prosecuting attorney's remarks out of context might seem on the intemperate side, we are not dealing here with an income tax evasion case, United States v. Fidanzi, 411 F.2d 1361 (7th Cir.), cert. den., 396 U.S. 929, 90 S.Ct. 265, 24 L.Ed.2d 227 (1969), nor a mail fraud case, United States v. Hoffman, 415 F.2d 14 (7th Cir.), cert. den., 396 U.S. 958, 90 S.Ct. 431, 24 L.Ed.2d 423 (1969). Instead there was substantial evidence that Cook had engaged in a plot to kill his wife by having a bomb explode on an airplane and if the explosion had been more violent not only Cook's wife but some eighty other people would have plunged to certain death. We cannot assume that Cook merely intended a mild bomb explosion which would depressurize the plane only. There would seem to be evidence supporting the comments of the prosecuting attorney.

Further, objections were not lodged to all of the remarks challenged on this appeal. In some instances, if a prosecuting attorney's remarks were continuously of an inflammatory nature with an appeal to prejudice or similar improper motives, the court might well have the duty *sua sponte* to correct the situation. Here, however, it is to be noted that when the words are placed in their context the closing arguments of the prosecution staff did not constitute an inflammatory type of appeal. The government's closing argument and rebuttal span sixty-five pages of the transcript and took an hour and a half to deliver. Yet only a few epithets uttered in the midst of an otherwise perfectly proper argument were involved. Substantially all of the argument, as it should have been, was an analysis of the evidence and the prosecutor's remarks were not "pronounced and persistent" as contended by Cook.

The comment contained in United States v. Ramos, 268 F.2d 878, 880 (2d Cir. 1959), is applicable here:

"[T]he comments complained of comprised only six lines (in the typed transcript) interspersed throughout a 24 page summation the rest of which was devoted to a thorough review of the facts and fair argument thereon. * * * The overwhelming predominance in the prosecutor's summation was stress on the details of the evidence and the reasoned inferences to be drawn therefrom. And it is not wholly without significance that of the comments now complained of several passed without objection at the time. * * * Appraised against the background of the trial, the whole summation and the judge's charge, the fleeting passages complained of, we feel sure, were not intended, or effective, as appeals to passion or prejudice and did not vitiate the fairness of the trial."

As in the *Ramos* case, the government attorney in the case before us told the jury at the beginning and end of his closing argument that his remarks were not evidence, which warning was repeated by counsel for Cook. In his charge to the jury, the judge also instructed the jurors that arguments of counsel were not in evidence, and that they were to rely solely on the evidence presented without prejudice.

Finally, it is to be noted that not only did Cook's counsel state to the jury that the prosecutors had ably represented the government and that he had never seen a better job, but in closing arguments for Cook similar phraseology to that complained of on the part of the prosecutor was used; for example, the statement was made, that "only an ogre, a monster * * * would put a bomb on a plane * * *" and that the defendant was being charged with "the most brutal, vicious crime any of us have ever come across."

Because of Cook's contention that one of the prosecutor's remarks was a clear implication that "a man like that" does

not deserve a trial and most certainly would not receive one in another judicial system, we must look at the entire remarks questioned.

Following some minutes of analysis of the evidence, the following occurred:

"You have heard the sordid evidence in this case. You have heard how that man, that man tried to blow up 80 people. You have heard it right here. It is fantastic. It is utterly fantastic, but he did it just that way. And you sat here dignifiedly and you listened intently. He deserves it. Our judicial system permits this kind of a trial even for a man like that.

Mr. Brown: I will object to that, your Honor.

The Court: The objection is overruled.

Mr. Schultz: Even for a man like that, because in our country we give everybody what they are entitled to under our judicial system. We sit here quietly and calmly and carefully and we listen to the evidence. And the Government has to prove its case beyond a reasonable doubt and we have done that. You have listened to the evidence, and on the evidence alone that I have just presented to you, we have proven that that man is guilty beyond all reasonable doubt."

The Assistant United States Attorney then proceeded to discuss in further detail the evidence.

We do not find the implication for which Cook contends. He relies on United States v. Hughes, 389 F.2d 535 (2d Cir. 1968). There the court reversed because of the prosecution's explicit statement that the defendant is "doubly vicious because he demanded his full constitutional rights here knowing full well he was guilty." Also, it is to be noted in *Hughes* that the court was quite reluctant to reverse because of the obvious guilt, but the intemperate statement coupled with an erroneous instruction, in the court's opinion, necessitated reversal.

In the case before us, while the prosecution, in view of the clear evidence, may have been unnecessarily skating on thin ice, we do not find that a fracture thereof occurred necessitating reversal.

The case is more nearly analogous to that of McManaman v. United States, 327 F.2d 21, at page 24 (10th Cir. 1964), where the court stated the following:

"The remarks of government counsel in closing argument which are said to be prejudicial were: '* * * We are not dealing with any amateurs.' 'Even to a fair trial. * * *' 'I opened my closing statement by saying we are not dealing with ordinary violators.' These remarks were not of a character as to deprive the defendants of a fair trial and were not unwarranted by the record. 'The dominating question, always, is whether the argument complained of was so offensive as to deprive the defendant of a fair trial.'"

It is true in *McManaman* that no objection was, made. However, this does not preclude consideration of error prejudicial to the fundamental rights of the accused.

Here in the context in which the remarks and questions were made, we do not find implicit therein any comment which reasonably could have been interpreted as that the accused should not have exercised his right to a trial.

## ELECTRONIC EAVESDROPPING

▆▆ Cook's final contention is that the trial court erred in refusing to require the government either to disclose to the defendant, or in the alternative to the court *in camera*, the existence of any electronic eavesdropping of defendant or his premises with sufficient facts and circumstances to enable the court to determine whether the eavesdropping, if any, was legal or illegal. Cook relied in this respect on Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); Taglianetti v. Unit-

ed States, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969), and Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The only indication brought to our attention, which we have found in the record to support the thought that there were any electronic eavesdropping devices, arises out of the assertion when the matter came before the district judge that on cross-examination there was some question about a telephone conversation that the defendant had had. The government attorneys were not unequivocal about whether any electronic listening devices had been employed but merely asserted that there were "no illegal eavesdropping devices used." The government counsel declined to state to defense counsel and the court whether or not eavesdropping equipment had been used.

In *Giordano*, Mr. Justice Stewart in concurring states that the procedures the district courts are to follow in making a preliminary determination that a surveillance has violated the Fourth Amendment have not been specified. He further stated, 394 U.S. at page 314, 89 S.Ct. 1163, that nowhere has it been indicated that this determination cannot appropriately be made in *ex parte, in camera* proceedings. In other words, full disclosures are not required to the adversary unless and until the district judge determines that an illegal electronic surveillance device was used. The judge here was not given the opportunity of making that determination. However, in its brief on this appeal, the government flatly asserts that "there was no electronic surveillance involved in this case. * * *" This was supported by a letter from the Chief of the General Crime Section, Criminal Division of the Department of Justice. It would have seemed preferable either that this information would have been available at the trial at the time the matter arose or at least that the information would have been furnished to the district judge.

Cook argues that the letter itself from the Criminal Division of the Department

of Justice is not entirely unequivocal on the subject, but we do not agree.

For the reasons hereinbefore set out, the judgment below is affirmed.

Affirmed.