John B. Klenda McPherson County Counselor Suite 201, The Grand Building 100 W. Kansas Avenue P.O. Box 1103 McPherson, Kansas 67460
Dear Mr. Klenda:
On behalf of the McPherson County Commissioners you pose several questions about the interpretation of K.S.A. 1996 Supp. 58-3212 which imposes requirements on the responsible party of a recreational trail created pursuant to subsection (d) of 16 U.S.C. § 1247 (1983). K.S.A. 1996 Supp. 58-3211 defines a responsible party as any person, for profit entity, not-for-profit entity or governmental entity that is responsible for developing, operating or maintaining a recreational trail.
Your first question is in two parts: What is meant by "a fence of the class requested by such property owner" found at subsection (10) (D) of the statute and whether the language imposes a limitation on the property owner's request. K.S.A. 1996 Supp. 58-3212 (a) (10) states:
 "The responsible party, at all times after transfer of the deed to the responsible party, shall:
 "(10) (A) maintain any existing fencing between the trail and adjacent property; (B) maintain any future fencing installed between the trail and adjacent property; (C) install between the trail and adjacent property fencing corresponding in class to that maintained on the remaining sides of such adjacent property; and (D) on request of an adjacent property owner, pay one-half the cost of installing fencing between the trail and such property owner's adjacent property with a fence of the class requested by such property owner, if not all remaining sides of such property are fenced. . . ."
The interpretation of a statute is a matter of law, and it is the function of the Court to interpret the statute to give it the effect intended by the Legislature. Todd v. Kelly, 251 Kan. 512, 515 (1992). When a statute is plain and unambiguous and also appropriate to an obvious purpose, the Court must give effect to the intention of the Legislature as expressed, rather than determine what the law should or should not be. Underwood v. Allmon, 215 Kan. 201 (1974); Martindale v.Tenny, 250 Kan. 621, 626 (1992). Words and phrases used in a statute should be construed according to context and the approved usage of the language, which means that words in common use are to be given their natural and ordinary meaning. State ex rel. Stephan v. Kansas RacingCommission, 246 Kan. 708, 719 (1990).
At issue in the phrase to be interpreted is the word "class" which is defined by Webster's Encyclopedic Unabridged Dictionary of the English Language (1983) as "a number of persons or things regarded as forming a group by reason of common attributes, characteristics, qualities or traits; kind; sort." The language "a fence of the class requested by such property owner" clearly presumes that there are different kinds or classes of fences which are appropriate for the obvious purpose of fencing adjacent land from a recreational trail. The identical phrase "class of fence" appears in K.S.A. 66-308 which deals with the fencing by and along a railroad for the purpose of keeping farm animals from injury by the trains. See generally Roman v. St. Louis-S.F. Rly Co., 120 Kan. 585
(1920) (the kind or class of fence depends on its obvious purpose). It is therefore our opinion that the phrase in question was intended to provide guidance about what kind of fence is to be erected. However, to state that the phrase imposes a limitation that the fence be of a kind or class intended for the purpose of fencing between a recreational trail and an adjacent landowner answers only the purely academic aspect of your question. We therefore direct our discussion to the practical aspects of the requirement established by the legal limitation (that the fence be of a kind intended for its purpose) and what clearly appears to be the intended application of the statutory requirement to the facts.
The limitation must be considered in light of the purpose for erecting the fence which is to protect the adjacent landowners' legitimate concerns, such as trespass by those using the recreational trail. Common sense dictates that the statutory provision in question making both parties (the responsible party and the landowner) equally financially liable for the fence be applied with regard to what is reasonably necessary in material and workmanship to make it appropriate to the purpose for which the fence was designed. See Griffith v. Carrothers,86 Kan. 93 (1911) (an adjoining landowner who is normally liable for half the cost of a fence is not liable for excess costs of a fence which exceeds what is reasonably necessary in material and workmanship to make it appropriate to the purpose for which it is designed). Thus it is our opinion that the purpose for which the fence is designed limits the "class" of fence that the adjacent landowner can request pursuant to subsection (10)(D), but that the adjacent landowner can specify any class of fence designed to fit reasonable needs such as privacy, prevention of trespass, etc.
Your second question is also in two parts: what effect, if any, does a conditional request for fencing have on the bond or escrow amount that is to be agreed upon between the responsible party and the county, and should conditional requests for fencing be considered firm commitments.
You indicate that you have received landowners' requests for fencing which are conditioned upon their prior authorization before construction. K.S.A. 58-3212 (b) requires the board of county commissioners and the responsible party to set a bond in an amount that is agreed upon between the two parties and includes the annual cost for the installation and maintenance of fencing between the trail and the adjacent property owners.
A perusal of the relevant statutes, K.S.A. 58-3211 et seq., discloses no authority for conditional requests for fencing. It is therefore our opinion that the requests for fencing must be considered firm commitments for all purposes of the act, including the required bond. To allow unauthorized conditional requests for fencing only for purposes of the bond would, in effect, allow a landowner to thwart the purpose of the act by causing imposition of an onerous bond that is based on a conditional request for a fence which the landowner may not in fact be willing to erect.
Your third question is who is responsible, the property owner or the responsible party, for the physical installation of the fence requested under K.S.A. 58-3212 (10) (D). The provision in question requires that the responsible party shall:
 "[O]n request of an adjacent property owner, pay one-half the cost of installing fencing between the trail and such property owner's adjacent property with a fence of the class requested by such property owner, if not all remaining sides of such property are fenced; . . ."
The provision requires that the responsible party pay one-half the cost "on request of the adjacent property owner." Clearly when the request for the funding is made to the responsible party by the landowner, the landowner must have a contract for the amount of the costs involved. The statute does not present an ambiguity when it requires that both the landowner and the responsible party be equally liable on the contract for the fencing. For this reason, it is our opinion that as a practical matter the landowner cannot make a request as required by the statute without first initiating the physical installation of the fence by contracting with a provider. See generally Renner v. Monsanto ChemicalCo., 187 Kan. 158, (1960); Appeal of Murphy, 184 Kan. 291 (1959) (discussion of the practical aspects and what clearly appears to be the intended application of the statutes to the situation.) There is no requirement, however, that the landowner come up with and pay up front the full cost of the fence installation.
Your fourth question is what procedure is to be followed in the event the responsible party and county are unable to reach an agreement as to the amount of the bond. The amount of the bond requirements are set in K.S.A. 58-3212 (b):
 "The bond or escrow account shall be conditioned on the responsible party's performance, and shall be in amount agreed upon between the responsible party and the county commission as sufficient to fully cover the annual cost of. . . ."
The amount of the bond is dictated by the costs of the following: (1) weed control along the trail, as required by subsection (a) (1); (2) litter control along the trail, as required by subsection (a) (4); (3) maintenance of the trail in a condition that does not create a fire hazard, as required by subsection (a) (10); (4) installation and maintenance of fencing between the trail and adjacent property within the county, as required by subsection (a) (10); and (5) installation and maintenance of signs along the trail, as required by subsections (a) (3), (a) (4) and (a) (11) (C). The statute does not address any procedure to be followed in the event that the responsible party and the county are unable to reach an agreement. The statute clearly contemplates that these specific items numbered one through five be considered in arriving at the amount of the bond. Without further information about the parties' disagreement, we are unable to reach the question about remedial procedures.
Your fifth question is whether the County is required to institute proceedings for recourse against the "responsible party" for failure to carry out the duties of the responsible party as listed in K.S.A.58-3212, and if so, at what point in time. K.S.A. 1996 Supp. 58-3215
provides the remedies for violations and states:
 "A city or county may institute procedures for recourse against the responsible party pursuant to 16 U.S.C. § 1247 (1983) and 49 C.F.R. § 1152. 29 (1986) upon the failure of the responsible party to comply with the provisions of this act." (Emphasis added).
It is our opinion that the decision to institute procedures for recourse against the responsible party is a discretionary matter in that the statutory language is "may" rather than "shall" and the context does not indicate otherwise. See State ex rel. Secretary of Social andRehabilitation Services v. Jackson, 249 Kan. 635 (1991) ("word `may' as opposed to `shall' is indicative of discretion or choice between two or more alternatives, but context in which word appears must be controlling factor. U.S. v. Cook, C.A. Ill., 432 F.2d 1093, 1098. Black's Law Dictionary 979.")
Your final question is what action can be taken by the County when it is determined the "responsible party" has failed to carry out its duties; in other words, what "procedures for recourse against the responsible party" should be undertaken pursuant to 16 U.S.C. § 1247 and49 C.F.R. § 1152.29 as outlined in K.S.A. 58-3215. Additionally, you inquire whether other remedies are available to the County pursuant to state law.
Although K.S.A. 1996 Supp. purports to authorize procedures for recourse to be found in federal law, the provisions of 16 U.S.C. § 1247
(1983) and 49 C.F.R. § 1152.29 (1986) are limited to addressing the use of rights of way for interim trail use and railbanking; they do not address any procedures for recourse against the responsible party for failure to comply with requirements imposed by state law. RailAbandonments — Use of Rights-of-Way as Trails — Supplemental Trails ActProcedures, Ex Parte No. 274 (Sub No. 13) decided December 2, 1987, 4 I.C.C. 2d 152. Additionally, the Surface Transportation Board does not impose any special regulation on trail construction or maintenance. In general, it is the Board's position that applicable local health and safety measures are adequate to address problems in either context. SeeRail Abandonments — Use of Rights-of-Way as Trails — Supplemental TrailsAct Procedures, (not printed ICC Decision, decided May 18, 1989, Ex Parte 274, (Sub. No. 13) served May 29, 1989, at 1989 W.L. 238631 at 4:
 "After carefully considering the comments, we conclude that the reporting requirements, maintenance standards, and other rule amendments suggested by NARPO (National Association of Reversionary Property Owners) and other parties are inconsistent with our limited role, could interfere with legitimate State and local law enforcement, are unnecessary and would be unduly burdensome. The parties comments and the experience we have gained from administering section 1247 (d) [16 U.S.C. § 1247] convince us that our current procedures are adequate, given our limited role and responsibilities under the Trails Act.
 "Those arguing that we should create new conditions on trail use to protect property owners ignore the fact that trail use must comply with State and local land use plans, zoning ordinances, and public health and safety legislation. See Iowa Southern, supra [Iowa Southern Railroad Company — Exemption 5 I.C.C. 2d [496, 505] (served May 18, 1989)]. This local regulation can address concerns about such issues as vandalism, noise, and maintenance. Indeed, the State and local agencies in the area are more attuned to the specific interests and needs of their communities and can adapt the requirements they impose to the special features and needs of particular trails. See the Trail Operators comments pointing out that : (1) many States already require trail operators to perform certain maintenance; (2) maintenance is inherently a local question. . . ."
There are, however, limitations to local regulation where local regulation becomes preempted by federal law. As explained in a current decision, preemption does not deprive the states of the power to regulate where the activity regulated is a peripheral concern of the federal law. In Cities of Auburn and Kent, WA — Petition for Declaratory Order —Burlington Northern Railroad Company — Stampede Pass Line, STB Finance Docket No. 33200, Surface Transportation Board, Served July 2, 1997 at slip op., 1997 STB Lexis 143 at 15 the limitation to this power is explained:
 "A key element in the preemption doctrine is the notion that only `unreasonable' burdens, ie., those that `conflict with' Federal regulation, `interfere with' Federal authority, or `unreasonably burden' interstate commerce, are superseded. The courts generally presume that Congress does not lightly preempt state law. Medtronic Inc. v. Lora Lohr, 116 S.Ct. 2240, 2250 (1996). Also, preemption does not deprive the state of the `power to regulate where the activity regulated [is] a merely peripheral concern' of Federal law. San Diego Building Trades Council v. Garmon, 359 U.S. 236, 243 (1959). In short, where the state or local law can be applied without interfering with the Federal law, the courts have done so. See Hayfield Northern R.R. v. Chicago N.W. Transport. Co., 467 U.S. 622 (1984) (state proceeding to condemn railroad property did not interfere with the Instate Commerce Act because the state process followed the abandonment of the line pursuant to the ICC's process and the line was no longer part of the national transportation system). Local law, however, is preempted when the challenged state statute `stands as an obstacle to the accomplishment and execution to the full purposes and objectives of Congress.' Perez v. Campbell, 402 U.S. 637, 649 (1971), quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941). Local law also is preempted where there is a compelling need for uniformity. Hammond, 726 F.2d at 491. . . ."
It is therefore our opinion that K.S.A. 1996 Supp. 58-3215 does not provide any procedures for recourse which are not already available through the applicable state or local law because the questions presented to us about the state statute deal with a peripheral concern of federal law, 16 U.S.C. § 1247 (1983) and 49 C.F.R. § 1152.29 (1986). Additionally it is our opinion that in the absence of any indication otherwise, the Legislature intended that the County avail itself of the remedies provided in the state statutes generally dealing with the subject matter or referred to by the Legislature in the specific statutory requirement, such as K.S.A. 1996 Supp. 58-3212 (a) (1) referring to weed control found at K.S.A. 2-1314; littering and criminal trespass in the criminal code, K.S.A. 21-3722 and 21-3721, respectively; K.S.A. 31-132, in the fire prevention code, authorizing the fire marshal upon request to assist municipalities; maintenance of bridges, culverts and roadway intersections for flood control by counties, K.S.A. 19-3301et seq. or drainage districts, K.S.A. 24-132 et seq.; and other statutes where they do not conflict.
In conclusion, it is our opinion that K.S.A. 1996 Supp. 58-3212 must be interpreted as intended by the Legislature. As a practical matter, the statute's requirements must be applied in light of the statute's purpose to provide public safety and property protection, without defeating the federal legislation's purpose to railbank the corridor for future transportation use. See generally Minutes of the House Committee on Energy and Natural Resources, March 15, 1996, March 18, 1996.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Guen Easley Assistant Attorney General
CJS:JLM:GE:jm